Our fifth case of the day is in Appeal Number 23-2557, the United States v. Larry Jones. Mr. Ackerman, nice to see you. I'd like to say good morning Judge Rovner who is apparently being recorded or something. Yep, she will hear that. I have to say something about Judge Rovner very quickly. I was reading 17 Fed Third last week and at the beginning of that hardbound copy there's a beautiful portrait of Judge Rovner. So I would like her to know that I paid enough attention to say hello. Having said that, I represent Larry Jones. He is not a candidate for a Good Conduct Medal. I don't expect to argue that. All I'm going to argue is he was entitled to a fair sentencing hearing and in this case the government presented two individuals, one a mass murderer who killed people at the behest of Big Don and the other a drug abuser and drug dealer named Spencer. I'd like to talk for a moment about Big Don because nobody else talks about him so I bothered to look it up. In my reply brief or my opening brief, I forgot which, I recite his history. He was involved in huge drug deals. He pled guilty in this building, 18 CR 356, to a superseding information. The government, based on a plea agreement, filed a sentencing recommendation of 10 years for Big Don. R-250 in that 18 CR 356, 358. Lo and behold, Docket R-351 has a confidential sentencing memo and lo and behold, Big Don does no time at all. Big Don, who has people murdered at the drop of a hat and provides drugs all over the West Side, all of a sudden walks. Time served one day. That's it. Now, what does that have to do with Larry Jones? Because Big Don is mentioned frequently in the sentencing hearing for Larry Jones. Dante, whatever his last name is, I'll call him Dante, had a plea agreement with the government before Judge Durkin in a separate drug case where he acknowledged murdering six people, attempted to murder several others, and was a drug dealer besides. And besides that, he had a long criminal son, was murdered. All of a sudden, Dante decides to be a government witness. So he turns around and tells the government about all his sins. Maybe he did, I don't know. For all the sins, he entered a plea agreement with the government for 20 to 30 years for everything. Attempted murders, murders, all that, everything he confessed to. He got a 30-year sentence based on the guilty plea. The six murders, four in Illinois, would have got him life without parole three times over. That's okay. And Mr. Spencer, who had his own drug organization, as he testified to, and who had drug suppliers, just like Dante did, other than Larry Jones, he got 70 months in custody, and he had a lengthy criminal history. The beauty of it is, for sentencing purposes, neither Dante nor Spencer had any records, any photographs, any ledgers, nothing, nothing at all. But the government had a Title III on Larry Jones, and interestingly, the Title III covered only the nine counts of indictment that Larry Jones was charged with in 2020. So, there's his sentencing hearing, and the government has nothing tangible at all. Nothing. Not a shred of evidence, not a ledger, not a photograph, not a tape. What they have is Spencer and Dockett, Dante Dockett, and two plea agreements, and all they testified to is their corroborating plea agreements that are almost interlocking. And with that, the district court judge, a very fine judge, decided that they corroborated one another, and therefore, the relevant, all this is about relevant conduct. He agreed he sold 178 grams of heroin every count in the indictment. He agreed with that, and that's what he pled guilty to. And his lawyer argued, contrary to what the government suggests, his lawyer argued, wait a second, he pled a six-year sentence. He deserves it. Give it to him. That's fine. But the relevant conduct, Larry Jones disputes. He disputes it. And the dispute is real, because we know when he pled guilty, on July 19, I believe was the date, or January 19, 2020, 2023, the judge stops the proceedings, because he won't own up to the relevant conduct. I didn't do that much. The figures are wrong. Ultimately, it turns out that he says, okay, based on the fact that the judge tells him, his lawyer can argue about it at sentencing, which his lawyer does. So, our very fine opponents for the government have, in their brief, answering brief, I believe from pages 23 to 30, I believe, that this was some wild scheme by the defense lawyer to get acceptance of responsibility. And that's why he didn't forcefully argue the relevant conduct issue. That's bogus. It's false. It's wrong. Now, did the defense I mentioned it in the brief, where the court goes through relevant conduct, including temporal proximity and the fact that because somebody is a dope dealer and says they're a dope dealer and has deals on the side, that isn't necessarily relevant conduct. And in this case, it isn't, because the indictment had a very isolated period of time. August 6, 2018 to September 3, 2019. Those are the dates of the indictment. He sold heroin and committed money laundering. Okay. Everything else is relevant conduct. Mr. Spencer's stuff goes back to 2016 and 2017. No temporal proximity. Dante Dockett was back in prison in 2017. Mr. Akron, let me interrupt you. You're getting into your rebuttal time a little bit, but I, having read your brief, your argument's clear. The difficulty that Mr. Jones has is that in his plea agreement, he agreed that relevant conduct could be considered. That's clear. Okay. I don't think that by agreeing to that, he was unable to contest particular facts and whether they fit within, you know, relevant conduct or whether they don't, or was the credibility finding. But that's really the only, that latter point is really the only issue, is it not, that he has before us because of his plea agreement. The government did not satisfy its burden of a preponderance of the evidence by reliable evidence. As to relevant conduct. Exactly. Okay. Why don't we give you a minute on rebuttal, if that's okay? Yep. You're quite welcome. All right. Let's hear from the government. Good morning, Your Honor. May it please the court, Michael Maione on behalf of the United States. The district court in this case correctly considered the defendant's entire scheme to distribute narcotics with his charged co-conspirator when it calculated his sentencing guidelines. Now I'm going to take the merits of the decision to calculate the entire scheme as one scheme first, and then I'll address the issue that I think the court just raised at the end there of waiver, if it pleases the court. So first, as the court knows, under the sentencing guidelines, courts do not consider only the offense of conviction. They also consider all acts that are in the same course of conduct or as part of the same common scheme or plan as the offense of conviction. In this case, the offense of conviction was, as counsel noted, a 13-month-long heroin distribution conspiracy between the defendant and an individual named Jamar Spencer, as well as a third individual named Marsha Fountain. In addition to the amount of narcotics that was dealt during that 13-month conspiracy, the district court also heard evidence at sentencing, largely in the form of testimony from Mr. Spencer himself, that the narcotics scheme between Mr. Spencer and the defendant was not only within that 13-month period from 2018 to 2019, but in fact began in 2016 with sales of marijuana, began and then turned to sales of heroin in May of 2017, and continued until 2020. The district court rightly considered that entire single scheme, that entire single conspiracy between Mr. Spencer and the defendant, as a single course of conduct or common scheme or plan because, first, it involved the same co-conspirator, defendant and Mr. Spencer. Second, it involved the sale of narcotics in the same location, largely in the Austin neighborhood of Chicago. And third, because it involved the same means of distributing narcotics. Specifically, the defendant would front or sell narcotics to Mr. Spencer, who would then distribute those narcotics on those street corners in the Austin neighborhood of Chicago, which the defendant controlled by virtue of his position as a high-ranking member of the Black P Stones street gang, of which Mr. Spencer was also a member. This was a single common scheme or plan. It was a single course of conduct, and the district court did not plainly err by considering it as such when it calculated the defendant's sentencing guidelines. Turning to the issue of waiver, we've heard now today, and the court has heard as seen in the briefs, that appellant now challenges whether his dealings with Mr. Spencer outside the time period of the offensive conviction were in fact relevant conduct. However, as has already been discussed today, in defendant's plea agreement, he stipulated not only that he had met Mr. Spencer in the early 2000s, and not only that he had sold both heroin, the narcotic that was at issue in the offensive conviction, but also that he sold to Mr. Spencer fentanyl, cocaine, and marijuana. He further stipulated that those sales were relevant conduct for the purposes of calculating his guidelines. What defendant didn't agree to, and I agree with appellant counsel on this, was the drug weights. The government included the particular drug quantities that the government intended to offer evidence of at sentencing of each of those drugs I just listed that defendant admitted that he sold to Mr. Spencer, but the defendant didn't agree that those weights were correct. So that was the state of play going into sentencing. Defendant, at three separate points, first in a defendant's version of his offense, second in his sentencing memorandum, and third at the sentencing hearing, defendant advanced the argument that he was not in any way minimizing the severity of his offense, that he was not in any way minimizing the extent of his drug dealings with Mr. Spencer, but that he was only exercising his right to put the government to its proof of preponderance of the evidence of proving the exact weights that the government intended to offer to the court that the court should use when calculating the defendant's sentencing guidelines. And that issue was litigated, and that issue was resolved by the district court, which was well within its discretion to make its own determinations about the credibility of the live witnesses that the district court had before it, and did make those credibility determinations and ultimately found that the government's profit, that the amounts of narcotics sold by defendant to Mr. Spencer, as described in Mr. Spencer's testimony, were credible. And it used those amounts to calculate the sentencing guidelines as one common scheme or plan. That was defendant's right, and defense counsel could not have made it more clear that he was attempting to protect defendant's acceptance of responsibility under the guidelines when he only challenged the government's proof of the quantities and not the fact that defendant had sold other drugs at other times than those described in the offensive conviction. That strategy was ultimately successful. Defendant received his acceptance of credibility credit in over the government's objection, but it also, that conscious and strategic decision to follow that course, also affected a waiver of the argument that defendant now makes, which is that this conduct that's outside the offensive conviction was not relevant, even though he stipulated that it was in fact relevant. Unless the court wants me to address some of the issues that were more tangentially touched upon in the briefs, I would conclude by asking the court to affirm the sentence. Okay, Mr. Maione, thank you. Thank you. Mr. Ackerman. Thank you for the minute. What the other than the testimony of Mr. Spencer and Mr. Dante Dockett, because there is nothing to support it. And if that testimony from Dante, Dante, a gangster since he was 15, Spencer since he was 16, if that's enough to put somebody in prison for 15 years or 16 years, that's what this case is. It's before the court. Thank you. Mr. Ackerman, thanks to you. We appreciate it very much to the government as well. We'll take the appeal under advisement.